**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEPHEN BUSHANSKY, <br><br> Plaintiff, <br><br> vs. <br><br> TRISTATE CAPITAL HOLDINGS, INC., DAVID L. BONVENUTO, JAMES J. DOLAN, AUDREY P. DUNNING, CHRISTOPHER M. DOODY, JAMES F. GETZ, MICHAEL R. HARRIS, KIM A. RUTH, E.H. DEWHURST, A. WILLIAM SCHENCK, III, JOHN B. YASINSKY, ANTHONY J. BUZZELLI, HELEN HANNA CASEY, and BRIAN S. FETTEROLF, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Stephen Bushansky ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against TriState Capital Holdings, Inc. ("TriState" or the "Company") and the members of TriState's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which TriState will be acquired by Raymond James Financial, Inc. ("Raymond James") through Raymond James' subsidiaries Macaroon One LLC ("Merger Sub 1") and Macaroon Two LLC ("Merger Sub 2") (the "Proposed Transaction").

2. On October 20, 2021, TriState and Raymond James issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 20, 2021 (the "Merger Agreement") to sell TriState to Raymond James. Under the terms of the Merger Agreement, TriState shareholders will receive: (i) 0.25 shares of Raymond James common stock, and (ii) $6.00 in cash for each share of TriState common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $1.1 billion.

3. On January 25, 2022, TriState filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that TriState stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Stephens Inc. ("Stephens"); and (iii) Stephens' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, TriState's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates a representative bank office in the city of Edison in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of TriState.

9. Defendant TriState is a Pennsylvania corporation, with its principal executive offices located at One Oxford Centre, 301 Grant Street, Suite 2700, Pittsburgh, Pennsylvania 15219 and a representative bank office in Edison, New Jersey. The Company is the bank holding company for its subsidiary bank, TriState Capital Bank (the "Bank"). TriState's common stock trades on the Nasdaq Global Select market under the ticker symbol "TSC."

10. Defendant David L. Bonvenuto ("Bonvenuto") has been a director of the Company since 2015.

11. Defendant James J. Dolan ("Dolan") has been a director of the Company since 2006.

12. Defendant Audrey P. Dunning ("Dunning") has been a director of the Company since 2020.

13. Defendant Christopher M. Doody ("Doody") has been a director of the Company since 2021.

14. Defendant James F. Getz ("Getz") is the founder of the Company, and has been Chairman of the Board and a director of the Company since its inception in 2006. Defendant Getz is also Chairman of the Board of the Bank, and previously served as President and Chief Executive Officer ("CEO") of the Company from its inception to January 1, 2022.

15. Defendant Michael R. Harris ("Harris") has been a director of the Company since 2020.

16. Defendant Kim A. Ruth ("Ruth") has been a director of the Company since 2017.

17. Defendant E.H. Dewhurst ("Dewhurst") has been a director of the Company since 2006.

18. Defendant A. William Schenck, III ("Schenck") has been Vice Chairman and director of the Company and the Bank since the inception of the Company in 2006.

19. Defendant John B. Yasinsky ("Yasinsky") has been a director of the Company since 2006.

20. Defendant Anthony J. Buzzelli ("Buzzelli") has been a director of the Company since 2014.

21. Defendant Helen Hanna Casey ("Casey") has been a director of the Company since 2006.

22. Defendant Brian S. Fetterolf ("Fetterolf") has been President and CEO of the Company since January 1, 2022, President of the Bank since 2015, CEO of the Bank since 2017, and a director of the Company since 2017.

23. Defendants identified in paragraphs 10-22 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

24. Established in 1962 and public since 1983, Raymond James is a leading diversified financial services company providing private client group, capital markets, asset management, banking and other services to individuals, corporations and municipalities. Together with its subsidiaries, Raymond James is engaged in various financial services activities, including providing investment management services to retail and institutional clients, merger & acquisition and advisory services, the underwriting, distribution, trading and brokerage of equity and debt securities, and the sale of mutual funds and other investment products. Raymond James also provides corporate and retail banking services, and trust services, operating predominately in the United States and, to a lesser extent, in Canada, the United Kingdom, and other parts of Europe.

25. Merger Sub 1 is a Florida limited liability company and a direct wholly-owned subsidiary of Raymond James.

26. Merger Sub 2 is a Florida limited liability company and a direct wholly-owned subsidiary of Raymond James.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

27. Established in 2006, TriState has three wholly owned subsidiaries: TriState Capital Bank, a Pennsylvania chartered bank; Chartwell Investment Partners, LLC, a registered investment advisor ("Chartwell"); and Chartwell TSC Securities Corp. ("CTSC"), a registered broker/dealer. TriState's bank subsidiary serves middle-market businesses in its primary markets throughout the states of Pennsylvania, Ohio, New Jersey and New York, as well as high-net-worth individuals on a national basis through its private banking channel. TriState markets and distributes its banking

products and services through a scalable branchless banking model, which creates significant operating leverage throughout its business as it continues to grow. TriState's investment management subsidiary provides investment management services primarily to institutional investors, mutual funds and individual investors on a national basis. TriState's broker/dealer subsidiary supports the marketing efforts for Chartwell's proprietary investment products.

28. The Company operates two reportable segments: Bank and Investment Management. The Bank segment provides commercial banking products and services to middle-market businesses and private banking products and services to high-net-worth individuals through the Bank. Total assets of the Bank were $12.07 billion as of September 30, 2021. The Investment Management segment provides investment management services primarily to institutional investors, mutual funds and individual investors through Chartwell and also supports marketing efforts for Chartwell's proprietary investment products through CTSC. Assets under management of Chartwell were $11.45 billion as of September 30, 2021.

29. On January 26, 2022, TriState reported its fourth quarter 2021 financial results, including record net income and revenue. The Company reported net income available to common shareholders of $19.9 million in the fourth quarter of 2021, up 87.7% from $10.6 million in the fourth quarter of 2020 and up 17.8% from $16.9 million in the third quarter of 2021. The Company earned $0.52 per diluted share in the fourth quarter of 2021, compared to $0.37 in the fourth quarter of 2020 and $0.44 in the third quarter of 2021. Net interest income ("NII") hit a record $51.1 million in the fourth quarter of 2021, increasing 41.8% from $36.1 million in the year-ago quarter and 9.6% from $46.7 million in the third quarter of 2021. Return on average common equity expanded to 12.25%, up from 7.87% in the year-ago period and 10.67% from the linked quarter. Chartwell's fourth quarter revenue increased by 1.4% from the linked quarter and 11.7% from the

prior year period. Reflecting on the quarterly results and looking towards the Company's future, defendant Fetterolf stated:

> The results we achieved in 2021, and our expectations for 2022 and beyond, are a direct result of our high-performance team, our ability across all three of our premier platforms to deliver holistic yet bespoke solutions for our focused client channels, our commitment to investing for our future success, and our drive to deliver exceptional risk adjusted returns over time. TriState Capital's ability to generate significant growth in net interest income and net interest margin in 2021, while favoring a long-term asset-sensitive approach, highlights the strength of our unique business model, relationships and ability to execute, as well as how a rising rate environment can serve as another catalyst for continued earnings growth going forward.

**The Proposed Transaction**

30. On October 20, 2021, TriState and Raymond James issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> ST. PETERSBURG, Fla. / PITTSBURGH, Pa., Oct. 20, 2021 -- Raymond James Financial, Inc. (NYSE: RJF) and TriState Capital Holdings, Inc. (NASDAQ: TSC) have entered into a definitive agreement under which Raymond James will acquire TriState Capital in a combination cash and stock transaction, valued at approximately $1.1 billion. Under the terms of the agreement, TriState Capital common stockholders will receive $6.00 cash and 0.25 Raymond James shares for each share of TriState Capital common stock, which represents per share consideration of $31.09 based on the closing price of Raymond James common stock on October 19, 2021. Raymond James has entered into an agreement with the sole holder of the TriState Capital Series C Perpetual Non-Cumulative Convertible Non-Voting Preferred Stock pursuant to which the Series C Convertible Preferred will be converted to common shares at the prescribed exchange ratio and cashed out at $30 per share. The TriState Capital Series A Non-Cumulative Perpetual Preferred Stock and Series B Non-Cumulative Perpetual Preferred Stock will remain outstanding and be converted into equivalent Preferred Stock of Raymond James.
>
> "TriState Capital has a terrific, client-centric franchise focused on serving clients with premier private banking, commercial banking and niche investment management products and services," said Paul Reilly, Chairman and CEO of Raymond James. "As we have followed the firm and management team over the past several years, including as its largest deposit client, we've admired its leadership position in offering securities-based lending through a scalable and robust technology platform. Importantly, this acquisition further illustrates our commitment to utilize excess capital through organic and inorganic growth that we expect to drive strong returns for shareholders over the long term."

"We founded TriState Capital 14 years ago because we saw an incredible opportunity to build a successful company built on a commitment to independence, a long-term perspective, integrity, and putting clients squarely at the center of everything we do and every decision we make," said Jim Getz, Chairman and CEO of TriState Capital Holdings. "Raymond James shares those values and allows us to be part of one of the most highly regarded financial services companies in the nation. Our clients will continue to benefit from working with the same talented teams and the TriState Capital and Chartwell brands they already know so well, along with the technology we've invested in to provide an exceptional and responsive client experience. Raymond James' strong balance sheet will provide supplemental capital and liquidity to continue enabling our fast-growing and highly scalable business model to meet clients' commercial and securities-based lending and asset management needs."

TriState Capital will continue operating as a separately branded firm and as a stand-alone division and independently chartered bank subsidiary of Raymond James, with Jim Getz remaining Chairman, Brian Fetterolf remaining TriState Capital Bank's CEO and Tim Riddle remaining Chartwell's CEO. Management and approximately 350 associates are expected to remain with the firm in its existing office locations to support TriState Capital's continued growth and high service levels.

Key Strategic Highlights:

- TriState Capital has grown private banking securities-based lending (SBL) organically at a 32% compound annual rate since 2017 and 39% over the last 12 months to $6.2 billion as of September 30, 2021. Supported by a leading digital lending platform and a robust risk management technology system, TriState Capital offers these loans to high net worth borrowers nationally by working with independent investment advisory firms, trust companies, broker-dealers, regional securities firms, family offices, insurance companies and other financial intermediaries

- Raymond James provides TriState Capital with relatively low-cost capital and a stable funding base to enable continued and more profitable growth

- The combination will provide TriState Capital additional resources to continue investing in its people, products and technology to further strengthen its client relationships

- Combination provides an additional bank charter and a sophisticated national liquidity and treasury management business to diversify Raymond James' deposit gathering capabilities and to provide additional internal FDIC-insured deposit capacity to Raymond James' Private Client Group clients

- TriState Capital has organically grown middle-market commercial loans at an 18% compound annual rate since 2017 and 15% over the last 12 months to $3.7 billion as of September 30, 2021

- TriState Capital's highly-experienced lending and credit management teams, combined with its disciplined loan approval process and collateral monitoring system, has led to superb credit quality across the entire portfolio

- Chartwell Investment Partners will maintain an independent brand and management and operate as a subsidiary of Carillon Tower Advisers with pro forma combined assets under management of approximately $80 billion. Chartwell will leverage Carillon Tower Advisers' multi-boutique structure to increase scale, drive distribution, and realize operational and marketing synergies

- TriState Capital's long-standing commercial fund finance solutions for private fund managers provides an opportunity to expand relationships with Raymond James' investment banking clients

Key Financial Metrics:

- Projected to be accretive to diluted earnings per share in the first full year post closing (excluding acquisition-related expenses), with over 8% accretion in diluted earnings per share after the third year; accretion estimates increase meaningfully, by approximately 400 basis points, assuming share repurchases post-closing to offset shares issued as part of the transaction consideration

- Primary driver of cost synergies is replacing a portion of TriState Capital Bank's current and future higher-cost deposits with Raymond James' lower-cost deposits from the Raymond James Bank Deposit Program

Raymond James is a leading diversified financial services company providing private client group, capital markets, asset management, banking and other services to individuals, corporations and municipalities. The firm serves more than 8,400 financial advisors managing approximately $1.2 trillion in client assets through a multiple affiliation model. Raymond James' bank subsidiary, Raymond James Bank, has assets of $35 billion serving corporations and Private Client Group clients. The firm's asset management subsidiary, Carillon Tower Advisers, manages retail and institutional fixed income and equity strategies of $69 billion.

TriState Capital Holding is a diversified financial services firm providing banking and asset management services to individuals, corporations and municipalities. Through a branchless bank model with over $12 billion in assets, TriState Capital

is the nation's leading provider of securities-based loans for clients of independent investment advisory firms, trust companies, broker-dealers, regional securities firms, family offices, insurance companies and other financial intermediaries that do not offer proprietary banking services.  The firm's banking franchise includes private banking and middle-market focused commercial lending with approximately $10 billion in loans.  Additionally, the firm's asset management franchise, Chartwell Investment Partners, manages assets of approximately $11 billion predominantly in equity and fixed income strategies.

The acquisition is subject to customary closing conditions, including regulatory approvals and approval by TriState Capital shareholders, and is expected to close in 2022.

Advisors to Raymond James are Raymond James & Associates as financial advisor and Sullivan & Cromwell LLP as legal counsel.  Advisors to TriState Capital are Stephens Inc. as financial advisor and Mayer Brown LLP as legal counsel.

**Insiders' Interests in the Proposed Transaction**

31.     TriState insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of the Company.

32.     Notably, certain Company insiders will secure positions for themselves with the surviving corporation.  For example, the Proxy Statement sets forth that defendant Getz will serve as Chairman of TriState Capital Bank following completion of the Proposed Transaction.  In addition, at least four current members of TriState Capital Bank's board of directors, including defendant Fetterolf, will be appointed to serve as directors of the surviving Bank, and those TriState Capital Bank directors who will not serve as directors of such board after the effective time will serve instead as advisors to such board.

33.     Additionally, Company insiders stand to reap substantial financial benefits for securing the deal with Raymond James.  Upon consummation of the Proposed Transaction, each outstanding Company option will be converted into the right to receive a cash payment and each

outstanding unvested Company restricted share will be converted into a number of Raymond James restricted shares, as set forth in the following table:

| Non-Employee Directors | Shares Underlying Stock Options | Restricted Shares |
|---|---|---|
| David L Bonvenuto | — | 9,000 |
| Anthony J. Buzzelli | 4,000 | 9,000 |
| Helen Hanna Casey | — | 9,000 |
| E.H. (Gene) Dewhurst | 12,000 | 9,000 |
| James J. Dolan | 6,000 | 9,000 |
| Christopher M. Doody | — | — |
| Audrey P. Dunning | — | 10,387 |
| Michael R. Harris | — | 9,762 |
| Kim A. Ruth | — | 9,000 |
| A. William Schenck III | — | — |
| John B. Yasinsky | 12,000 | 9,000 |
| **Total** | **34,000** | **90,892** |

| Executive Officers | | |
|---|---|---|
| James F. Getz | — | 157,135 |
| Brian S. Fetterolf | — | 152,085 |
| David J. Demas | — | 49,217 |
| Timothy J. Riddle | — | 49,100 |
| **Total** | **0** | **407,537** |

34. Moreover, under the terms of the Merger Agreement, TriState may establish for the benefit of its employees a retention program which could award Raymond James restricted stock units in the aggregate amount of $15 million.

**The Proxy Statement Contains Material Misstatements or Omissions**

35. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to TriState's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

36. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Stephens; and (iii) Stephens' potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections*

37. The Proxy Statement omits material information regarding the Company's financial projections.

38. For example, in connection with Stephens' *Discounted Cash Flow Analysis – Tristate Capital Holdings, Inc.*, the Proxy Statement sets forth that:

> Stephens performed a discounted cash flow analysis using projections developed by TriState Capital's executive management. Stephens calculated a range of implied per share equity values for TriState Capital based upon the discounted net present value of the projected after-tax free cash flows for the projected period (January 2022 through December 2026) and a terminal value at year-end 2026 based on a next-twelve-months multiple of net income.

Proxy Statement at 57.  Yet, the Proxy Statement fails to disclose the Company's projected free cash flows for January 2022 through December 2026.

39. Additionally, the Proxy Statement sets forth Company projections for Net Income Available to Common Shareholders, Earnings Per Share, and Total Assets for the years ending December 31, 2021 through 2023, but the Proxy Statement fails to disclose the Company's projections for Net Income Available to Common Shareholders, Earnings Per Share, and Total Assets for January 2024 through December 2026.

40. The omission of this material information renders the statements in the "Opinion of TriState Capital's Financial Advisor" and "Certain Unaudited Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Stephens' Financial Analyses*

41. The Proxy Statement describes Stephens' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Stephens' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, TriState's public stockholders are unable to fully

understand these analyses and, thus, are unable to determine what weight, if any, to place on Stephens' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

42. With respect to Stephens' *Relevant Public Companies Analysis – TriState Capital Holdings, Inc.*, *Relevant Public Companies Analysis – Raymond James Financial, Inc.*, and *Relevant Transactions Analysis – TriState Capital Holdings, Inc.*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed, respectively.

43. With respect to Stephens' *Discounted Cash Flow Analysis – TriState Capital Holdings, Inc.*, the Proxy Statement fails to disclose: (i) the projected after-tax free cash flows for the period January 2022 through December 2026; (ii) quantification of the terminal value for the Company; and (iii) quantification of the inputs and assumptions underlying the discount rate of 12%.

44. With respect to Stephens' *High/Low Analyst Price Targets – TriState Capital Holdings, Inc.* and *High/Low Analyst Price Targets – Raymond James Financial, Inc.*, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

45. Without such undisclosed information, TriState stockholders cannot evaluate for themselves whether the financial analyses performed by Stephens were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Stephens' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

46. The omission of this information renders the statements in the "Certain Unaudited Financial Information" and "Opinion of TriState Capital's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Stephens' Potential Conflicts of Interest***

47. The Proxy Statement fails to disclose material information concerning Stephens' potential conflicts of interest.

48. The Proxy Statement sets forth that:

> Stephens is serving as financial adviser to TriState Capital in connection with the mergers and is entitled to receive a fee from such services in an amount equal to 0.74% of the aggregate consideration paid in connection with the mergers, a significant portion of which is contingent upon the consummation of the mergers. Stephens also received a $1,000,000 fee from TriState Capital upon rendering its fairness opinion, which opinion fee will be credited in full towards any fee which will become payable to Stephens upon the closing of the mergers.

*Id.* at 61. The Proxy Statement, however, fails to disclose the total amount of compensation Stephens expects to receive for its services, as well as the amount of compensation contingent upon the consummation of the Proposed Transaction.

49. The omission of this information renders the statements in the "Opinion of TriState Capital's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and TriState's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by Stephens. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

55. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

57.     Plaintiff repeats all previous allegations as if set forth in full.

58.     The Individual Defendants acted as controlling persons of TriState within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of TriState, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

61.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, TriState's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of TriState, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to TriState stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 1, 2021

**WEISSLAW LLP**

By  */s/ Mark D. Smilow*
Mark. D. Smilow
305 Broadway, 7th Floor
New York, NY 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com
      -and-
Richard A. Acocelli (to be admitted pro hac vice)
305 Broadway, 7th Floor
New York, NY 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*